## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-01384-SCT

*KENNETH RAY CHURCHILL, JR.*

*v.*

*PEARL RIVER BASIN DEVELOPMENT DISTRICT AND PIKE COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/96 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ALFRED LEE FELDER |
| | RODNEY G. TIDWELL |
| | DON ROGERS |
| ATTORNEYS FOR APPELLEES: | WAYNE DOWDY |
| | JOHN B. CLARK |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED 05/27/1999 |
| MOTION FOR REHEARING FILED: | 6/10/99 |
| MANDATE ISSUED: August 5, 1999 | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE AND FACTS

¶1. On August 1, 1981, fifteen-year-old appellant Kenneth R. Churchill, Jr. traveled with his baseball team and several adult chaperones to an end-of-season outing at the Bogue Chitto Water Park ("the Park") in Pike County. The Park was developed by appellee Pearl River Basin Development District ("the District") and maintained by appellee Pike County. Norma Rials testified the members of the team were not charged a fee for admission to the Park. Churchill asserts, however, that he did in fact pay an admission fee upon entering the Park. Upon arriving at the Park, Churchill and his group rented inner tubes and began the first of several floating trips down the river that day.

¶2. After having made approximately two trips down the river, Churchill and his group found a swing hanging from a tree limb extending over part of the river. Although the Bogue Chitto River runs mainly through park land, the record indicates the tree to which the swing was attached was located on property which was not owned by the Park. The District submits the swing could not have been in place for over one

or two days. At any rate, the members of the group began swinging over and dropping into the river. The water underneath the swing was shallow, and the District notes some members of the group were standing in the river, thus revealing the river was only waist-deep.

¶3. All parties agree James Harrington was the first person to use the swing. Churchill submits he was the second to use the swing after Harrington's initial jump. The District notes, however, Churchill's younger brother testified two group members had used the swing prior to Churchill's jump. Upon diving into the river from the swing, Churchill struck his head on the river bottom and broke his neck. Churchill was taken to Baptist Hospital in Jackson, where he had surgery for his damaged vertebrae. He was transferred to Methodist Rehabilitation Center on October 1, 1981.

¶4. All parties agree Churchill made a remarkable recovery from his injuries, but Churchill notes his recovery was not complete. Churchill stated he had to learn to be left handed, that he has limited control of his bladder and bowel functions, that he has difficulty walking at a normal pace and that he often drops objects and trips while walking. Still, the record indicates Churchill is gainfully employed at an auto dealership.

¶5. Churchill filed suit against Pike County and the District on June 26, 1987, seeking damages in strict liability, tort, and for breach of an implied contract. The circuit court granted summary judgment on the basis of sovereign immunity, but this Court reversed and remanded for a new trial in *Churchill v. Pearl River Basin Dev. Dist.*, 619 So. 2d 900 (Miss. 1993). Specifically, this Court found the purchase of liability insurance by the District and the County served to waive sovereign immunity to the extent of the liability coverage, and we overruled authority holding to the contrary. *Churchill I*, 619 So. 2d at 906.

¶6. The District notes, following this Court's issuance of the mandate in July 1993, Churchill proceeded in a less than expeditious manner in bringing the matter to trial once again. The District was forced to file motions to compel discovery by Churchill, and Churchill filed numerous motions for continuance. On November 14, 1996, the circuit court issued a warning to the parties, notifying them of steps which must be taken in order for the case to remain on the active docket. A status conference was held on January 10, 1996, and the case was set for trial on June 26, 1996. A final pretrial conference was held on June 24, and Churchill once again moved for a continuance, which was denied.

¶7. Following a five-day trial, the jury returned a verdict for the defendants. The circuit court denied Churchill's post-trial motions, and Churchill, feeling aggrieved, appealed listing the following nine assignments of error:

> **I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GIVE CHURCHILL'S PEREMPTORY INSTRUCTION.**
>
> **II. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT CHURCHILL'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.**
>
> **III. WHETHER THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**
>
> **IV. WHETHER THE TRIAL COURT ERRED WHEN IT ADMITTED OVER PLAINTIFF'S OBJECTION AN ASSUMPTION OF THE RISK INSTRUCTION AND AN ASSUMPTION OF THE RISK SPECIAL INTERROGATORY.**

**V. WHETHER THE TRIAL COURT ERRED IN GIVING JURY INSTRUCTION DPR-14-A, AS WRITTEN.**

**VI. WHETHER THE TRIAL ERRED IN REFUSING TO ADMIT EVIDENCE OF SUBSEQUENT SIMILAR INJURIES TO THAT OF CHURCHILL WHEN THE DEFENDANTS HAD PUT ON EVIDENCE OF NO INJURIES IN THE YEARS 1976 UNTIL AUGUST 1981.**

**VII. WHETHER THE TRIAL COURT ERRED IN ALLOWING DEFENSE COUNSEL TO READ FROM DOCUMENTS NOT IN EVIDENCE DURING SUMMATION.**

**VIII. WHETHER THE TRIAL COURT ERRED IN NOT EXCUSING JUROR HENSLEY, A DEPUTY SHERIFF OF THE DEFENDANT PIKE COUNTY, FOR CAUSE.**

**IX. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ADMIT PROFFERED LIFE EXPECTANCY TABLES.**

## DISCUSSION OF LAW

¶8. Because this case is reversed and remanded for a new trial, only issues IV, V and IX need be addressed.

**IV. WHETHER THE TRIAL COURT ERRED WHEN IT ADMITTED OVER PLAINTIFF'S OBJECTION AN ASSUMPTION OF THE RISK INSTRUCTION AND AN ASSUMPTION OF THE RISK SPECIAL INTERROGATORY.**

¶9. The primary issue on appeal in the present case involves the assumption of risk instruction which was submitted to the jury. Instruction DPR-11 reads as follows:

> The court instructs the jury that if you find from a preponderance of the evidence in this case that at the time of the accident complained of, Kenneth Churchill, Jr., (1) Knew the depth of the water beneath the swing in question; and (2) Appreciated the danger of diving into water of that depth; and (3) Knowingly, deliberately and voluntarily chose to expose himself to the danger, so as to assent to the dangerous situation, then you are instructed that Kenneth Churchill, Jr. assumed the risk of injury from diving or flipping into the water at the point in question, and the plaintiff cannot recover from either defendant.

In granting these instructions, the trial judge stated "I think that this instruction and the interrogatory properly states the law in this state, that assumption of risk is an absolute bar to recovery."

¶10. In concluding "assumption of risk is an absolute bar to recovery," the trial judge was in error. The assumption of risk instructions in the present case are problematic in light of our previous decisions dealing with this doctrine. In ***Horton v. American Tobacco Co.***, 667 So. 2d 1289 (Miss. 1995), Justice Banks wrote "[w]hile Horton's actions in continuing to smoke might be characterized as evidence supporting a conclusion of assumption of the risk, that doctrine is subsumed in our comparative fault doctrine." ***Horton***, 667 So. 2d at 1292. Justice Dan Lee wrote an opinion joined by Justices Sullivan, Pittman, and McRae and in part by Justice Banks, in which he stated he would bar the doctrine of assumption of risk outright.

The cases above illustrate the problems we have had wrestling with the distinction between assumption of the risk and comparative negligence. The groundwork, however, has been laid for the Court to abolish the doctrine outright and merge it with comparative negligence. Therefore, I would take this opportunity to do just that and abolish the doctrine of assumption of the risk. . . .

*Id.* at 1306. (Lee, P.J., concurring in part and dissenting in part). Thus, five justices expressed the view in *Horton* that the doctrine of assumption of risk should either be subsumed into comparative negligence or abolished outright, and *Horton* accordingly carried precedential authority in this regard.

¶11. Our most recent pronouncement on the validity of the assumption of risk doctrine is found in ***Donald v. Triple S Well Service, Inc.***, 708 So. 2d 1318 (Miss. 1998). In *Donald*, this Court reversed on grounds unrelated to the assumption of risk instruction, but Justice Banks, joined by Presiding Justices Sullivan and Pittman, stated the doctrine of assumption of risk had been subsumed into comparative negligence:

> In *Horton v. American Tobacco Co.*, 667 So. 2d 1289 (Miss. 1995), we considered the issue of assumption of the risk instructions. . . . A majority of this Court concluded that the trial court erred in granting the assumption of the risk instruction. *Id.* at 1289-90. The rationale for this conclusion is that the concept of assumption of the risk is subsumed in our comparative fault doctrine. *Id.* at 1293 (Banks, J., writing for the plurality) and 1305-06 (Lee, P.J., concurring in part and dissenting in part). In other words, assumption of the risk on the part of the plaintiff merely goes to the percentage of fault attributable to the plaintiff; it no longer affords a complete defense to the defendant unless the jury finds that the plaintiff's assumption of risk proportionately reduces damages to zero. *Id.* at 1292.

*Donald*, 708 So. 2d at 1325. Justice McRae wrote a specially concurring opinion in which he also expressed the view that "assumption of the risk has been subsumed into our comparative negligence doctrine." *Id.* at 1327 (McRae, J., concurring). Justice Mills wrote a dissent, joined by Justices Smith and Roberts and in part by Chief Justice Prather, in which he argued that assumption of risk should remain a "viable doctrine." *Id.* at 1327 (Mills, J., dissenting).

¶12. We take this opportunity to hold once again that the assumption of risk doctrine is subsumed into comparative negligence. Any actions which might constitute an assumption of risk should be dealt with only in the context of the comparative negligence doctrine. A jury is always free to decide that an act which constitutes an assumption of risk was the sole proximate cause of a plaintiff's injuries. We see no reason why acts which might constitute an assumption of risk should, as a matter of law, create a complete bar to recovery. The comparative negligence doctrine gives juries great flexibility in reaching a verdict. Any fault on the part of the plaintiff should be considered only in the context of comparative negligence.

### V. WHETHER THE TRIAL COURT ERRED IN GIVING JURY INSTRUCTION DPR-14-A, AS WRITTEN.

¶13. Recognizing the adverse authority in *Horton* and *Donald*, the defendants' primary argument in the present case is not that the assumption of risk instruction issued in the present case correctly states the law of this State. The defendants instead argue that when considered as a whole, the jury instructions properly instructed the jury on Mississippi law and, any error in instruction DPR-11 was "cured" by the other instructions.

¶14. The defendants point out Justice Banks's plurality opinion in *Donald*, recognized the jury had been issued an assumption of risk instruction. Justice Banks noted, however:

> (W)hile the instructions here in question refer to the fact that the plaintiff may have "assumed the risk," they also require the jury to consider and determine whether the plaintiff's action was the *sole* proximate cause of his injuries. Only if the jury so finds is the plaintiff entitled to recover nothing. This requirement is in line with our law of comparative fault.

*Donald*, 708 So. 2d at 1326. Justice Banks thus concluded the instruction in *Donald* correctly stated Mississippi law because assumption of risk by the plaintiff would be a complete defense only if the plaintiff's assumption of risk was the sole proximate cause of his injuries.

¶15. In this context, the defendants point to Jury Instruction DPR-14-A, which provides in part:

> If you find from a preponderance of the evidence that the plaintiff did not satisfy himself that the water was deep enough and that other conditions were adequate to execute his dive with safety, then he was negligent. If you further find that such negligence, if any, was the sole proximate cause of the accident which is the basis of the plaintiff's complaint, then you are under a sworn duty to return a verdict for the defendants.

Based on our decision in *Donald*, the defendants urge us to find Instruction DPR-14-A cured any errors in the assumption of risk instruction DPR-11. We are unable to do so. Any curative effect of instruction DPR-14-A was defeated by Special Interrogatory C submitted to the jury. Special Interrogatory C reads in part:

> (1) Do you find by a preponderance of the evidence that prior to his dive from the swing that Kenneth Churchill, Jr. (a) Knew the depth of the water beneath the swing in question; and (b) That he appreciated the danger of diving into the water of that depth; and (c) That he knowingly, deliberately, and voluntarily chose to expose himself to the danger so as to assent to the dangerous situation?
>
> _____ Yes
>
> _____ No
>
> If your answer is yes, then you should return a verdict in favor of the defendants. The form of your verdict may be "We, the jury, find for the defendants." If your answer is no then you should proceed to the other interrogatories.

¶16. The combined effect of the assumption of risk instruction DPR-11 and Special Interrogatory C was such that no reasonable juror would realize Churchill could recover on the basis of comparative negligence.

¶17. Special Interrogatory C required the jury to answer by checking "yes" or "no" in response to the question of whether Churchill assumed the risk of injury. The wording of the interrogatory precluded recovery by Churchill if the jury found he assumed the risk of injury by diving into the river. By requiring the jury to mark "yes" or "no" in the blank on the interrogatory, the jury's attention was improperly focused solely on the question of assumption of risk, rather than on the correct principle of law, comparative negligence. Accordingly, we have no choice but to reverse and remand for a new trial because of the prejudicial effect of the erroneous jury instruction and the special interrogatory on assumption of risk.

## IX. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ADMIT PROFFERED LIFE EXPECTANCY TABLES.

¶18. At the end of his case-in-chief, Churchill sought to introduce life expectancy tables as an exhibit. This exhibit, Churchill argued, would aid the jury in calculating Churchill's damages for future pain and suffering. The trial judge refused to admit the tables because Churchill had failed to show any future economic loss.

¶19. This Court has long recognized that evidence of life expectancy is appropriate for determining future pain and suffering. *See, e.g.*, ***Arnold v. Ellis***, 231 Miss. 757, 765, 97 So. 2d 744, 746 (1957) (stating use of life expectancy of plaintiff in computations of damages for future pain and suffering was appropriate). Evidence of life expectancy need not, however, come into evidence in the form of a complex set of life expectancy tables. Our trial court judges retain the ability to exclude relevant evidence that may tend to confuse or mislead the jury. *See* Miss. R. Evid. 403. Generally the trial court can take judicial notice of the information found in life expectancy tables. ***Stewart v. State***, 394 So. 2d 1337,1339 (Miss. 1981); Miss. R. Evid. 201. The ability to have the court take judicial notice of life expectancy removes the need for the admission of a complex set of statistical data which may tend to confuse or mislead the jury.

¶20. As long as the requirements for judicial notice in M.R.E. 201 are followed, and evidence has been admitted to support an award of damages for future pain and suffering, evidence of Churchill's life expectancy should be admitted. This task can be accomplished through the use of an appropriate jury instruction. *Cf.* Mississippi Model Jury Instructions: Civil 20.22-1 (Mississippi Judicial College 1998) (using life expectancy figures in wrongful death context).

## CONCLUSION

¶21. We reaffirm our prior holdings and state the doctrine of assumption of risk has been subsumed into comparative negligence. Because the jury instructions and the special interrogatory submitted to the jury incorrectly stated the law, no reasonable juror would recognize that Churchill could recover on the basis of comparative negligence. Accordingly, we have no choice but to reverse and remand for a new trial. The judgment of the Pike County Circuit Court is reversed, and this case is remanded for a new trial consistent with this opinion.

¶22. **REVERSED AND REMANDED**.

**SULLIVAN AND PITTMAN, P.JJ., BANKS AND McRAE, JJ., CONCUR. PRATHER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH AND MILLS, JJ. COBB, J., NOT PARTICIPATING.**

### PRATHER, CHIEF JUSTICE, DISSENTING:

¶23. I respectfully dissent. I recognize that the doctrine of assumption of risk has been subsumed into comparative negligence, but, in my view, any errors in the jury instructions in the present case did not rise to the level of reversible error. I would note that one of the jury instructions instructed the jury in a manner consistent with a recent holding of this Court dealing with assumption of risk. Specifically, jury instruction

DPR-14-A provided in part that:

> If you find from a preponderance of the evidence that the plaintiff did not satisfy himself that the water was deep enough and that other conditions were adequate to execute his dive with safety, then he was negligent. If you further find that such negligence, if any, was the sole proximate cause of the accident which is the basis of the plaintiff's complaint, then you are under a sworn duty to return a verdict for the defendants.

Thus, Instruction DPR-14-A required the jury to find for the defendants based on Churchill's failure to "satisfy himself that the water was deep enough" only if such failure were the "sole proximate cause" of the accident.

¶24. In ***Donald v. Triple S Well Service, Inc.***, 708 So.2d 1318 (Miss. 1998), this Court noted that the jury in that case had been issued an assumption of the risk instruction, but we nevertheless affirmed, based on the existence of language similar to that found in DPR-14-A. This Court held in ***Donald*** that:

> [W]hile the instructions here in question refer to the fact that the plaintiff may have "assumed the risk," they also require the jury to consider and determine whether the plaintiff's action was the *sole* proximate cause of his injuries. Only if the jury so finds is the plaintiff entitled to recover nothing. This requirement is in line with our law of comparative fault.

*Donald*, 708 So.2d at 1326. We thus concluded that the instruction in ***Donald*** correctly stated Mississippi law in light of the fact that the instruction provided that any assumption of risk on the part of the plaintiff would only serve as a complete defense if the plaintiff's action in assuming the risk were the sole proximate cause of his injuries.

¶25. In my view, a similar result should be reached in the present case. Any errors made by the trial court in instructing the jury were, in my view, cured by DPR 14-A, and the jury instructions, when considered as a whole, do not constitute reversible error. I would affirm the judgment of the trial court, and I must respectfully dissent.

**SMITH AND MILLS, JJ., JOIN THIS OPINION.**