*1014 GRIFFIS, J.,
for the Court:
¶ 1. Edward Montedonico, trustee for Michael Jefferies’s bankruptcy estate, filed suit against Mount Gillion Baptist Church in the Circuit Court of Panola County. He alleged that the church had negligently provided Jefferies, an independent contractor, with a defective ladder that caused Jefferies’s injuries. The circuit court granted summary judgment in favor of the church, and the trustee now appeals. The trustee argues the circuit court erred when it found that the danger was inherent to Jefferies’s work and that Jefferies had assumed the risk. We agree; therefore, we reverse the judgment of the circuit court and remand this case for further proceedings consistent with this opinion.
FACTS
¶ 2. The church contracted with ADT for the provision of a security alarm in the church’s gymnasium. ADT subcontracted with Eagle Security Systems, Inc. to install the alarm. Jefferies, an employee of Eagle Security, was sent to perform the installation.
¶ 3. The job required an extension ladder, but Jefferies did not have one. Jef-feries testified in a deposition that he was initially going to turn down the job for that reason, but another employee for Eagle Security called the church and then told Jefferies there would be a ladder at the gym for him to use when he arrived. George Fondren, a deacon at the church, testified in an affidavit that he borrowed an extension ladder from another church member and provided it to Jefferies when Jefferies arrived at the gym. Jefferies stated that the ladder was lying on the gym floor when he arrived. Both Fondren and Jefferies said that they examined the ladder and found nothing wrong with it.
¶ 4. Jefferies proceeded with the installation, using the ladder. He went up and down the ladder approximately fifteen to twenty times without incident and had nearly completed the job. He went up the ladder again to finish running some wires. This time, on his way back down, something happened to cause the ladder to fall to the ground with Jefferies still clinging to it. Jefferies testified that the ladder “just went.”
¶ 5. He testified that he looked around to figure out what had caused the fall and discovered that the ladder was missing a rubber grip on one of its legs. These grips are placed at the bottom of ladder legs to prevent them from slipping on smooth surfaces. He alleges that the ladder slid along the gym floor because it was missing a grip. Jefferies testified that, as a result of the fall, he suffered a “severely shattered right wrist” and a dislocated elbow.
¶ 6. The trustee filed suit against the church. The church moved for summary judgment, which was granted. The trustee now appeals.
STANDARD OF REVIEW
¶ 7. The standard of review of an order granting summary judgment is de novo. PPG Architectural Finishes, Inc. v. Lowery, 909 So.2d 47, 49 (¶8) (Miss.2005) (citing Hurdle v. Holloway, 848 So.2d 188, 185 (¶ 4) (Miss.2003)). It is well settled that “[a] summary judgment motion is only properly granted when no genuine issue of material fact exists.... The moving party has the burden of demonstrating that no genuine issue of material fact exists within the ‘pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits.’ ” Id. (quoting M.R.C.P. 56(c)).
*1015 ANALYSIS
¶ 8. The circuit court found that Jeffer-ies, an independent contractor, had no right to recover from the church. Specifically, the court found that the danger of falling while on a ladder was inherent Jef-feries’s work of installing security alarms. The court also found that Jefferies had assumed the risk of falling while on the ladder. We do not agree.

1. Whether the danger was inherent to Jefferies's work.

¶ 9. To support its holding that the danger was inherent to Jefferies’s work, the circuit court cited Vu v. Clayton, 765 So.2d 1258 (Miss.2000). In that case, the Mississippi Supreme Court found that an air-conditioner repairman could not recover from the owners of a restaurant who had hired him to fix their air conditioner. Id. at 1254 (¶ 2). The repairman had to go into the restaurant’s attic to reach the air conditioner. Id. He fell through a hole in the attic’s flooring, injured himself, and sued the restaurant owners. Id. The supreme court held that the danger of falling through the attic’s flooring was inherent to the repairman’s work; therefore, he could not recover from the restaurant owners. Id. at 1256-57 (¶ 15).
¶ 10. There is an important difference between Vu and this case. In Vu, the allegation was that the restaurant owners had breached their duties to provide the repairman with a safe workplace or to warn him of the danger. In other words, it was a premises-liability case. In this case, the allegation is that the church provided Jefferies with a defective instrumentality. The danger of being provided a defective instrumentality by the employer is not inherent to the work of an independent contractor.
¶ 11. “The duty to furnish a safe place of work is distinguishable from the duty to furnish safe appliances and instrumentalities for the purposes of the stipulated work.” 31 A.L.R.2d 1375 (1953). “Where an employer undertakes or agrees to furnish an independent contractor any of the instrumentalities with which the work is to be carried on, the employer owes to the contractor and the contractor’s employees the duty of exercising reasonable care with respect to such instrumentalities.” 41 Am. Jur.2d Independent Contractors § 42 (2005).
¶ 12. The governing authority here is Oden Construction Co. v. McPhail, 228 So.2d 586 (Miss.1969). In that case, a general contractor and a subcontractor were installing steel beams on a construction project. Id. at 586-87. The general contractor would bore holes in the walls, and the subcontractor would follow behind and install the beams into the holes. Id. The general contractor erected the necessary scaffolding. Id. The scaffolding collapsed, killing an employee of the subcontractor. Id. The deceased employee’s heirs sued the general contractor, and the supreme court upheld a jury verdict in the heirs’ favor. Id. at 590-91. The supreme court quoted the Restatement (Second) of Torts section 392 (1965), stating:
One who supplies to another, directly or through a third person, a chattel to be used for the supplier’s business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by the person for whose use the chattel is supplied[:]
(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
*1016 (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.
Oden Constr. Co., 228 So.2d at 588. That section of the restatement includes the following illustration:
A employs B, a painter, to repaint his residence. The contract provides that B be allowed to use the ladders which A has upon his premises. C, an employee of B, while using one of these ladders, is hurt by a defect which, although not readily observable, could have been discovered by the exercise of a reasonably careful inspection. A is subject to liability to C.
Restatement (Second) of Torts § 392 cmt. e, illus. 1 (1965).
¶ 13. The danger of being provided a defective ladder by the church was not inherent to Jefferies’s work of installing security alarms. The Vu holding does not apply to this case. Therefore, summary judgment on this basis was improper.

2. Whether Jefferies had assumed the risk.

¶ 14. The doctrine of assumption of the risk has largely been subsumed into our comparative-fault scheme and no longer operates as an absolute bar to recovery. Churchill v. Pearl River Basin Dev. Dist., 757 So.2d 940, 943-44 (¶ 12) (Miss.1999). Rather, in the vast majority of cases, the actions that arguably constitute assumption of the risk on the part of the plaintiff should be considered contributory negligence and reduce recovery, as opposed to foreclosing recovery. Id. However, in some situations the doctrine still applies.
¶ 15. The defense is available to property owners/employers in suits by their hired independent contractors. “[T]he owner|7employer] is not liable for death or injury of an independent contractor or one of [the independent contractor’s] employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees ‘assumed the risk.’” Nofsinger v. Irby, 961 So.2d 778, 781 (¶ 10) (Miss.Ct.App.2007) (citations omitted).
¶ 16. Where the doctrine is applicable, a plaintiff is said to have assumed the risk and is, therefore, barred from recovering when the defendant proves the following elements:
(1) [KJnowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger in the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner as to register assent on the continuance of the dangerous condition.
Elias v. New Laurel Radio Station, Inc., 245 Miss. 170, 179, 146 So.2d 558, 561-62 (1962).
¶ 17. To support its holding that Jeffer-ies had assumed the risk, the circuit court cited Nofsinger. In that case, the defendant hired the plaintiff, an independent contractor, to help in the construction of the defendant’s duplex. Nofsinger, 961 So.2d at 779 (¶ 3). The plaintiff used the defendant’s table saw, which did not have a safety guard, without protective goggles. Id. at 779 (¶ 4). The saw threw a piece of wood into the plaintiffs eye, blinding him in that eye, and he sued the defendant. Id. The plaintiff admitted that he understood the risks of using the saw without a protective guard and goggles. Id. He was an experienced carpenter who had used similar saws thousands of times. Id. This Court held that he had assumed the risk and, therefore, could not recover. Id. at 783 (¶ 13).
*1017 ¶ 18. In this case, Jefferies testified that he did not notice the ladder was missing one of its rubber grips until after the fall. The church offered nothing to contradict that statement. There is a significant difference between knowingly using a table saw without a guard or goggles, as in Nofsinger, and climbing a ladder that, unbeknownst to the climber, is missing a rubber grip. As the proof currently stands, Jefferies did not assume the risk. “No person can assume a risk that he does not know exists.” Elias, 245 Miss, at 179, 146 So.2d at 561. The church is free to argue and attempt to prove assumption of the risk at trial, but it was not a ground for summary judgment.
¶ 19. We reverse the circuit court’s order granting summary judgment in favor of the church and remand this case to the circuit court for further proceedings consistent with this opinion.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.