# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00020-SCT

*ANDY WHITE AND AMY WHITE*

*v.*

*TARGA DOWNSTREAM, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/2021 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| TRIAL COURT ATTORNEYS: | STACEY L. STRAIN |
| | S. CRAIG PANTER |
| | DARYL PORTER, JR. |
| | SAGE E. HARLESS |
| | DANIEL CHRISTOPHER JONES |
| | S. EVERETT PEPPER |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | S. EVERETT PEPPER |
| | S. CRAIG PANTER |
| | DARYL PORTER, JR. |
| ATTORNEYS FOR APPELLEE: | STACEY L. STRAIN |
| | SAGE E. HARLESS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 03/16/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This case asks the Court to determine the scope of the intimately connected doctrine, which immunizes a premises owner against claims of an independent contractor for injuries that arise out of or are intimately connected with the work that the independent contractor was hired to perform. The Circuit Court of Forrest County granted summary judgment to

Targa Downstream, LLC (Targa), a premises owner, for claims filed against it by Andy White, an independent contractor, based on the intimately connected doctrine. Prior to granting summary judgment in favor of Targa, the circuit court denied Targa's first motion for summary judgment, holding that a genuine issue of material fact existed as to whether Targa had modified its equipment in a manner that constituted a dangerous condition and whether White knew or should have known of the alleged dangerous condition. After a careful review of the law, this Court reverses the circuit court's grant of summary judgment in favor of Targa and remands the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2.     White, an independent contractor, worked for Ergon Trucking, Inc. (Ergon), a subsidiary of Ergon, Inc., loading and hauling chemicals. Another Ergon, Inc., subsidiary, Lampton-Love, Inc. (Lampton-Love), contracted with Targa to store Lampton-Love's propane at Targa's facility in Petal. Targa owned and operated the facility in Petal, which consisted of propane storage as well as equipment to load and unload the propane.

¶3.     White was tasked with loading and hauling the propane for Ergon from Targa's Petal facility. Prior to operating the propane loading equipment at the Targa facility and hauling the propane, White was required to load and unload the trailer with propane during several supervised training sessions. White was also required to receive Targa's site-specific verification. Additionally, he was licensed to haul hazardous materials. To load the trailer with propane from the Petal facility, White would connect Targa's hose to Ergon's trailer and open two valves, one on the Targa hose and the other on the Ergon trailer, to allow for the

2

flow of propane from the hose into the trailer. In order to detach Targa's hose from Ergon's trailer, the two valves had to be closed. To close the valve on the Targa hose, a detachable handle would be placed on the valve, and White would make a quarter turn, which would close the valve and stop the stream of propane. The detachable handle was connected to the Targa hose by a length of chain and could be removed from the valve on the hose. Once the two valves were closed, a third bleeder valve would be opened to relieve the pressure in the Targa hose in order to safely detach it from the trailer. After the pressure was relieved via the bleeder valve, the hose could then be detached from the trailer and placed back in the resting tray that held it when it was not in use.

¶4. In its originally manufactured condition, the handle on the Targa hose valve was not detachable and contained a locking device that prevented the valve from being inadvertently opened. Targa does not dispute that it modified the valve to remove the handle, rather it disputes that the modification constituted a dangerous condition. It is Targa's contention that the removal of the handle from the valve "made Targa's equipment *safer* for its intended use, reducing the likelihood of inadvertent movement."

¶5. On January 14, 2017, White drove to Targa's Petal facility to load propane for Ergon. White used Targa's loading equipment at Loading Dock Number 1 to load the propane into the trailer, a task he had completed without incident nineteen times before, seventeen of those times at the same loading dock with the same equipment. White gave deposition testimony stating that he operated the Targa loading equipment on January 14, 2017, exactly as he had done on all previous occasions but that when he was returning the Targa hose to its resting

3

tray, the valve on the Targa hose opened, and liquified propane began spilling out of the hose. White stated that the hose began spewing propane "like a water hose going off of a fire truck or something, just going crazy flopping everywhere." White testified that he tackled the hose, grabbed the detachable handle, placed it back on the Targa hose valve and, eventually, closed the valve, stopping the flow of propane. White stated that he could not remember whether he had removed the detachable handle from the valve on the Targa hose prior to returning it to its resting tray. He stated that it was possible the detachable handle had remained on the valve and was knocked into the open position when he went to place the hose back in its resting tray, though he could not recall exactly what had caused the valve to open.

¶6.    Following the incident, White stated in his complaint that he left the Targa facility with no feeling or indication that he had been injured by coming in contact with the liquified propane. A short time later, however, White began to notice his legs stinging as if he had a mild sunburn. White went to the Ergon yard, removed his "propane soaked clothes," took a shower and put on fresh clothes. White then proceeded to his trailer to complete the propane delivery to Canton, Mississippi. White did not seek medical attention until the following day, January 15, 2017. By the time White did seek medical treatment, he stated that blisters had formed on his legs and that he was in excruciating pain.

¶7.    White filed this action against Targa[1] on August 17, 2017, alleging damages for

---

[1]Initially, White also named Ergon and three Ergon employees as defendants in the lawsuit. An agreed order dismissing these defendants was entered on March 6, 2019, leaving Targa as the only remaining defendant in the case.

several causes of action, all centering around the claim that Targa negligently owned, operated and maintained its propane storage facility and loading equipment in Petal. Following White's failure to submit an expert report by the deadline of January 18, 2019, Targa moved for summary judgment. Targa claimed it was entitled to summary judgment as a matter of law because White had failed to produce evidence that Targa's "equipment was unsafe or defective or that the incident was caused by a dangerous condition" and that Targa had no duty to protect White from a danger that he knew or should have known of under Mississippi Code Section 11-1-66 (Rev. 2019). White filed his response in opposition to Targa's motion for summary judgment on February 27, 2019. White enclosed an expert report along with his response, though there is no expert report from White's expert in the record designated for this appeal. White's expert report stated that the valve on the Targa hose "was modified from the original manufacturer's condition in a manner that made the handle removable and eliminated the lock device that is in place on the handle." White's expert report further opined that the removal of the locking device on the handle "caused or contributed to the valve inadvertently opening."[2] (Internal quotation marks omitted.)

¶8.	A hearing on Targa's motion for summary judgment was held on February 28, 2019. On August 28, 2019, the circuit court denied Targa's motion, holding that "there exist[ed] a question of fact as to whether the alleged modification was a dangerous condition, and whether [White] knew the modification to the ball valve could cause the valve to

---

[2]Though White's expert report was not in the record on appeal, it was quoted in both the circuit court's order denying the first motion for summary judgment and Targa's rebuttal expert report.

inadvertently open and spill propane."

¶9. Following the court's denial of the motion for summary judgment, Targa filed a motion to reconsider, which was denied by the circuit court on August 24, 2020. Targa did not petition for an interlocutory appeal following the trial court's denial of summary judgment and the motion to reconsider. Trial was set for April 16, 2021, and later reset to October 10, 2022, due to the ongoing COVID-19 pandemic. On October 26, 2021, Targa moved for summary judgment a second time. In this subsequent motion for summary judgment, Targa contended that the intimately connected doctrine barred White's claims. On December 14, 2021, the circuit court granted Targa's second motion for summary judgment, holding that Targa was under no duty to provide a safe working environment for White or to warn White of the modification to the ball valve since the injury arose out of and was intimately connected with the work White was hired to perform. White timely appealed the circuit court's order granting Targa's second motion for summary judgment.

## ISSUES PRESENTED

¶10. The issues presented on appeal can best be summarized as follows:

I. Whether the intimately connected doctrine applies to the present case.

II. Whether this Court may affirm the grant of summary judgment on the alternative grounds raised by Targa.

## STANDARD OF REVIEW

¶11. "This Court employs a *de novo* standard of review when considering a trial court's grant or denial of summary judgment." *State ex rel. Watson v. Long Beach Harbor Resort, LLC*, 346 So. 3d 406, 409-10 (Miss. 2022) (internal quotation marks omitted) (quoting

6

*Hobson v. Chase Home Fin., LLC*, 179 So. 3d 1026, 1033 (Miss. 2015)). Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). "While evidence is viewed in the light most favorable to the nonmoving party, there must be a material fact issue to preclude summary judgment." *Peak v. Cohee*, 294 So. 3d 604, 607 (Miss. 2020) (citing *Leffler v. Sharp*, 891 So. 2d 152, 156 (Miss. 2004)).

## DISCUSSION

**I.      Because a genuine issue of material fact exists concerning whether Targa created a dangerous condition and White's knowledge of the alleged dangerous condition, the intimately connected doctrine does not apply to immunize Targa from liability.**

¶12.    Generally, "the owner of a building owes a duty to an independent contractor and the latter's employees to furnish a reasonably safe place to work or to give warning of danger." *Miss. Chem. Corp. v. Rogers*, 368 So. 2d 220, 222 (Miss. 1979) (citing *Miss. Power Co. v. Brooks*, 309 So. 2d 863, 866 (Miss. 1975)). Under the intimately connected doctrine, however, this duty is relieved when a premises owner "contracts with another to perform work, and the contractor or their employee suffers injuries that '[arise] out of or [are] intimately connected with the work.'" *Peak*, 294 So. 3d at 607 (quoting *Magee v. Transcon. Gas Pipe Line Corp.*, 551 So. 2d 182, 185 (Miss. 1989)).

¶13.    This Court first adopted the intimately connected doctrine in 1969, stating that "the owner or occupier is under no duty to protect [an independent contractor and its employees] against risks arising from or intimately connected with defects of the premises, or of

7

machinery or appliances located thereon, which the contractor has *undertaken to repair*."

***United Roofing & Siding Co. v. Seefeld***, 222 So. 2d 406, 408 (Miss. 1969) (emphasis added) (quoting 41 Am. Jur. 2d *Independent Contractors* § 28 (1968)). Recently, in ***Peak***, this Court recognized that the intimately connected doctrine was not limited to repair work, stating that "[t]hough the [intimately connected] doctrine typically arises in construction or repair cases, its application is not limited solely to those contexts. The Court of Appeals has examined the doctrine's application to a variety of contracted work." ***Peak***, 294 So. 3d. at 607. This Court also stated that "[t]he lone exception [to the intimately connected doctrine] applies to arrangements where 'the project owner maintains any right of control over the performance of that aspect of the work that has given rise to the injury.'" *Id.* (quoting ***Magee***, 551 So. 2d at 186).

¶14.    In ***Peak***, an insurance adjuster, Michael Cohee, was dispatched to inspect an insured homeowner's roof for storm damage. *Id.* at 605. Before venturing onto the roof, Cohee noted significant rotting. *Id.* at 606. Once on the roof, Cohee confirmed the rot he had observed from the ground, and "he stepped through a decayed or rotten section . . . and fell through the decking[.]" *Id.* Cohee filed suit against Peak, the homeowner, claiming that Peak "failed to make the premises safe or warn about the roof's condition." *Id.* Cohee argued that "he was an invitee and Peak knew or should have known about the rotted roof and disclosed its condition to him. . . . Alternatively, Cohee argue[d] that because he was not there to perform any repairs on Peak's roof, it [fell] outside the [intimately connected] doctrine's scope." *Id.* at 608. This Court ruled against Cohee, finding that he had admitted noticing rot prior to

climbing on the roof, thereby admitting knowledge of the dangerous condition. *Id.* This Court also held that the intimately connected doctrine was not limited to repair or construction work, rather it inquired into "the nature of the contracted work and whether the injury arose from or was intimately connected to that work." *Id.* The Court continued, stating that "[i]t obviously follows that falling through a damaged roof—like the one here that he had already noticed had significant rotting issues—is an injury intimately connected to his adjustment work." *Id.*

¶15.    Targa argues that White is like the insurance adjuster in *Peak* because the risk of spilling and being exposed to liquified propane is intimately connected with the work of loading and hauling propane, and therefore his claims against Targa should be barred. While White's situation is similar to that of the insurance adjuster in *Peak*, it does bear two significant differences. First, unlike the natural storm damage described in *Peak*, White alleges that Targa created the dangerous condition that resulted in his injury. Second, unlike the plaintiff in *Peak*, whether or not White knew or should have known about the modification to the valve handle and the—arguably increased—potential for an inadvertent spill of liquified propane is a disputed fact.

¶16.    The modification of the valve handle by Targa, and White's disputed knowledge of the modification, removes this case from the purview of *Peak*. We observe that the Mississippi Court of Appeals considered similar facts in ***Montedonico v. Mount Gillion Baptist Church***, 64 So. 3d 1012 (Miss. Ct. App. 2011). In ***Montedonico***, Michael Jeffries—an employee of an independent contractor, Eagle Security—was dispatched to

9

Mount Gillion Baptist Church to install a security alarm. *Id.* at 1014. When he arrived, he realized that the job required an extension ladder, which he did not have. *Id.* A deacon at the church arranged to borrow a ladder from another church member for Jeffries to use. *Id.* Jeffries used the ladder for the installation and went up and down it approximately fifteen to twenty times before, "on his way back down, something happened to cause the ladder to fall to the ground with Jeffries still clinging to it." *Montedonico*, 64 So. 3d at 1014. According to Jeffries, "the ladder was missing a rubber grip on one of its legs[,]" which is what caused the ladder to slip. *Id.* The trial court granted summary judgment in favor of the church because it "found that the danger of falling while on a ladder was inherent [in] Jeffries's work of installing security alarms." *Id.* at 1015. The Court of Appeals, however, reversed the judgment of the trial court, finding instead that "[t]he danger of being provided a defective instrumentality by the employer is not inherent to the work of an independent contractor." *Id.*[3] The Court of Appeals quoted this Court's opinion in *Oden Construction Co. v. McPhail*, in which we said:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the

---

[3]The Court of Appeals in *Tanner v. Roseburg Forest Products South, Ltd. Partnership*, 185 So. 3d 1062, 1065 (Miss. Ct. App. 2016), distinguished *Montedonico*. The independent contractor in *Tanner* had used the forklift that injured him a year prior to his fall. *Tanner*, 185 So. 3d at 1065. The *Tanner* independent contractor testified further that he was aware the forklift leaked fluid prior to his injury. *Id.* But, even though Jeffries—in the *Montedonico* case—only used the ladder in question on one particular occasion, he traversed the ladder upwards of fifteen times before he was injured. *Montedonico*, 64 So. 3d at 1014. The distinguishing factor between the outcome of the two cases was not the frequency of use, but rather the knowledge of the dangerous condition.

chattel in the manner for which and by persons for whose use the chattel is supplied[:]

> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

*Montedonico*, 64 So. 3d at 1015-16 (alteration in original) (quoting ***Oden Constr. Co. v. McPhail***, 228 So. 2d 586, 588 (Miss. 1969)).

¶17.    White's claims are couched in terms of premises liability. White alleges that Targa failed to properly maintain its equipment, specifically the propane hose and its locking device, which were undisputedly tampered with by Targa. It is undeniable that Targa supplied the equipment, the propane hose, which White was required to use to perform his duties. Targa maintained control of and was responsible for maintenance of the hose at all times. The danger of being provided operating equipment with a latent dangerous condition—just like being provided a defective ladder—by the premises owner is *not inherent* to the work of an independent contractor. This is especially so when a premises owner affirmatively creates the latent dangerous condition in the equipment and when the equipment is essential to the work of the independent contractor. Whether Targa's modification of the valve handle constituted a dangerous condition and whether White knew of the modification remains a genuine issue of material fact.

¶18.    Expanding the intimately connected doctrine to include a situation in which the defendant affirmatively creates a dangerous condition, unbeknownst to the plaintiff, and then

claims immunity would be nonsensical. Further, if Targa's modification did create a dangerous condition, and it failed to warn White, then applying the intimately connected doctrine to immunize Targa would be in direct opposition to the doctrine's underlying policy, which places the burden of responsibility on the party in the best position to eliminate or avoid the dangerous condition. *McSwain v. Sys. Energy Res., Inc.*, 97 So. 3d 102, 108 (Miss. Ct. App. 2012) (quoting *Tharp v. Bunge Corp.*, 641 So. 2d 20, 25 (Miss. 1994)). In the cases in which this Court has found that the intimately connected doctrine applies to bar claims against a defendant-premises owner, the plaintiff-independent contractor has always been the party best situated to avoid the harm. *See Jackson Ready-Mix Concrete v. Sexton*, 235 So. 2d 267, 269 (Miss. 1970) (holding that an experienced electrician who was hired to perform electrical work on the property and was injured when he came into contact with a live electrical wire was barred from asserting a claim against the premises owner "[i]n the light of [his] experience and familiarity with the dangers inherent in dealing with electricity[.]"); *Vu v. Clayton*, 765 So. 2d 1253, 1256 (Miss. 2000) (holding that the air conditioner repairman "was in the better position to determine and eliminate possible dangers" while repairing a unit in the attic of a building than the premises owners who had never been in the attic); *Magee*, 551 So. 2d at 186 (holding that an exception to the intimately connected doctrine arises when "the owner maintain[s] substantial de facto control over those features of the work out of which the injury arose[.]"); *see also Grammar v. Dollar*, 911 So. 2d 619 (Miss. Ct. App. 2005); *Ratcliff v. Ga. Pac. Corp.*, 916 So. 2d 546 (Miss. Ct. App. 2005); *Int'l Paper Co. v. Townsend*, 961 So. 2d 741 (Miss. Ct. App. 2007); *Tanner*, 185 So.

12

3d 1062.

¶19. While this Court in **Peak** stated that the intimately connected doctrine was not limited to repair or construction work, it did not state that the expansion of the doctrine outside of construction and repair work swallowed *every* premises liability claim asserted by an independent contractor. **Peak**, 294 So. 3d at 607. This case does not create a new exception to the intimately connected doctrine. Rather, the doctrine simply does not expand so far as to cover a situation in which a premises owner affirmatively creates a dangerous condition without the knowledge of the independent contractor, and the independent contractor is injured as a result. It would be illogical to give a premises owner immunity when it remains unclear which party was in the best position to avoid the harm.

## II. Targa is not entitled to summary judgment on the alternative grounds it raises before this Court.

¶20. The circuit court granted summary judgment in favor of Targa on the basis of the intimately connected doctrine. We find that the grant of summary judgment predicated on the intimately connected doctrine was reversible error. This Court, however, has held that "[d]efendants on appeal are . . . entitled to raise any alternative ground based on the pleadings in the court below which would support the judgment here." **Brocato v. Miss. Publishers Corp.**, 503 So. 2d 241, 244 (Miss. 1987). Targa raises two alternative grounds on which, it argues, this Court should affirm summary judgment: 1) White knew or should have known of the alleged danger, and 2) no dangerous condition actually existed.[4] The circuit court

[4]Targa argues on appeal that White's expert report was insufficient to create a genuine issue of material fact on the issue of a dangerous condition and that it was never properly before the circuit court since White never filed the report with the clerk. As stated

13

previously ruled on both of Targa's alternative grounds, in its first motion for summary judgment, finding that a genuine issue of material fact existed. We agree.

¶21.    In the circuit court's ruling on Targa's first motion for summary judgment, the court held that "there exists a question of fact as to whether the alleged modification was a dangerous condition, and whether Andy White knew the modification to the ball valve could cause the valve to inadvertently open and spill propane." The court then restated this ruling in its order granting summary judgment in favor of Targa based on the intimately connected doctrine. The court continued, stating in its order granting summary judgment that "[White had] provided evidence by way of [his] expert witness that [he] was injured from a dangerous modification [to] the handle of the ball valve that caused or contributed to the valve inadvertently opening . . . ." Both White's expert report and his deposition testimony[5] were sufficient to establish a genuine issue of material fact concerning whether the modification

_____

above, the expert report was not included in the record of this appeal. There is no dispute, however, regarding the existence of the report and that the report was served on Targa and relied upon by the court. Both the court and Targa's rebuttal expert report quoted White's expert report. The court relied on the expert report and found that it was sufficient to show a genuine issue of material fact regarding the dangerous condition. If Targa wishes to challenge the sufficiency of White's expert report on appeal, then Targa bears the burden of including that report in the record for this appeal. *See Shelton v. Kindred*, 279 So. 2d 642, 644 (Miss. 1973) ("Th[e] Court may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record. It must be presumed that the rulings of the trial court were correct, and such presumption will prevail, unless the actual record supports the contrary view.")

    [5]The expert report opined that the valve had been modified from its originally manufactured condition and that the modification caused or contributed to the valve inadvertently opening. Further, White gave no indication that he knew the valve had been modified and that the modification could potentially increase the chance of an inadvertent spill of propane.

of the valve constituted a dangerous condition and whether White knew or should have known about the condition and its alleged dangerous nature. The circuit court went on to hold, however, that since "the unintended release of propane [was] a risk of injury intimately connected to [White's] work[,]" he was barred from recovery despite the genuine issue of material fact as to the existence of a dangerous condition and his knowledge of it, the subject of the first denial of summary judgment. As discussed above, we disagree with this application of the intimately connected doctrine.

## CONCLUSION

¶22.    This Court finds the intimately connected doctrine does not apply to immunize a premises owner when a genuine issue of material fact remains as to whether the defendant premises owner affirmatively created a dangerous condition and whether the plaintiff independent contractor—who merely used the alleged defective equipment—had actual or constructive knowledge of the alleged dangerous condition. Further, because a genuine issue of material fact remains, this Court is precluded from affirming the grant of summary judgment. This Court reverses the trial court's grant of summary judgment in favor of Targa and remands the case for further proceedings consistent with this decision.

¶23.    **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**

15